COMMERCIAL CREDIT CORP. v. PEPPER et al.

No. 13130.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1951.

Rehearing Denied March 16, 1951.

W. J. Oven, Jr., Ben A. Meginniss, Harry Morrison, and Ford L. Thompson, all of Tallahassee, Fla., for appellant.

Leonard Pepper, T. T. Turnbull, Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

The plaintiff, Commercial Credit Corporation, as assignee of Lenal Company, Inc., hereinafter called Lenal, brought this action against Milton W. Pepper, Florence M. Pepper and Leonard Pepper, as partners doing business under the firm name of Pepper Supply Company, to recover the sum of $67,291.25 allegedly due plaintiff's assignor. A trial on the merits was had and at the close of all the evidence the plaintiff moved for a directed verdict. The court below denied the motion and submitted the case to the jury, which returned a verdict for defendants. The trial court entered judgment for defendants and thereafter denied plaintiff's motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial. This appeal followed.

The only ground for reversal worthy of serious consideration is the contention that the trial court abused its discretion in overruling plaintiff's motion for a new trial.

Plaintiff alleged in its amended complaint that defendants owed Lenal the sum of $64,684.49 for goods sold by Lenal to defendants or to Lenal Company of the South between December 1, 1946 and March 1, 1947, payment for which was guaranteed by defendants. The additional sum of $2,606.76 for which judgment was demanded was for money had and received by defendants from named persons which was to be paid by defendants to Lenal. It was further alleged that for a valuable consideration Lenal assigned[1] to plaintiff all of the indebtedness described and that plaintiff notified defendants of the assignment.

The answer denied that defendants were indebted to Lenal in any amount and, although admitting the assignment, averred that defendants had no knowledge or notice thereof until June 16, 1947. The answer

1. The uncontroverted evidence in this record shows that in December, 1946, plaintiff entered into a financing arrangement with Lenal whereby from about the middle of December 1946, into March 1947, many accounts held by Lenal against defendants or guaranteed by them were assigned to plaintiff to secure advances. The record reveals that accounts assigned are dated from October 31, 1946, through February 28, 1947, inclusive.

also set forth that defendants and Lenal of the South had an agreement with Lenal under the terms of which Lenal of the South was to receive a discount of ten percent and two percent on all merchandise shipped by Lenal to Lenal of the South or its customers.[2]

In response to interrogatories propounded by Commercial Credit defendants admitted the correctness of a schedule of some 150 items, aggregating $64,684.49, covering goods, wares, and merchandise shipped by Lenal to Lenal of the South or its customers and also admitted that on or about July 31, 1947 Lenal of the South received by cash or credit from the persons named the sum of $2,606.76. And in response to interrogatory No. 16, inquiring as to whether any loans were made by defendants or Lenal of the South to Lenal, the defendants answered that on or about April 1, 1947 Milton W. Pepper made a loan to Lenal in the amount of $20,000.[3]

A pre-trial conference was held and thereafter the Court made and entered an order which in part recites: That the only proof that would be required of plaintiff at the trial in proof of its case in chief would be: (a) the introduction of the statement of indebtedness due plaintiff in the sum of $67,291.25 and evidence as to what the statement represents; and (b) the agreement between Lenal and Lenal of the South, and Milton W. Pepper, stating the conditions of liability of Lenal of the South and Pepper Supply to Lenal.[4] That upon this evidence being submitted the burden of proof in the case would then shift to defendants to establish the defense setup to the indebtedness sued upon and in proof thereof defendants might submit evidence of their claim of indebtedness due from Lenal to Lenal of the South, Pepper Supply Company and defendants in support of the defense that they were in fact indebted to Lenal in no amount at the time the claims against them were assigned, by reason of offsetting claims held against Lenal and that said facts were fully known to plaintiff at the time it accepted the assignments. That defendants were not entitled to recover a judgment against plaintiff, but were entitled only to show whether plaintiff is a holder of valid accounts against defendants, assigned in due course and without notice of the existence of the offsetting indebtedness due defendants from Lenal and of trade practices in effect between them.

The case came on for trial and the plaintiff introduced the evidence specified in the pre-trial conference order as necessary to establish a *prima facie* case of indebtedness due the plaintiff in the amount of $67,291.-25. Plaintiff also introduced into evidence Lenal's accounts receivable ledger account with Pepper Supply Company, which shows that the first accounts assigned to plaintiff were dated October 31, 1946.

In an effort to overcome plaintiff's *prima facie* case and in support of the defense that they were not indebted to plaintiff in any amount, defendants offered evidence to prove they were entitled to receive credit on the indebtedness sued upon for merchandise returned direct to plaintiff in the amount of $23,416.86, for merchandise shipped by Lenal of the South to Lenal or

---

2. See footnote 4, infra.

3. The following also appears in response to interrogatory No. 16: "The following loans were made: * * * By Pepper Supply Company—Accounts Receivable $30,006.39. Commissions due on merchandise sold by Lenal Company, Inc.,— $78,630.39."

4. The agreement reads in part as follows: "Method of Operation before complete inventory is completed at Lenal Company of the South: 1. All specific orders obtained by Pepper prior to contract date of August 25 treated as hereafter specified for contract. 2. On shipments made from Lenal Company, Inc., warehouse either direct to customers or to Lenal Company of the South warehouse, it is intended to set up cost to Lenal Company of the South on basis of Lenal Company, Inc. cost plus handling charge. 3. Above cost to be determined on or before January 1, 1947. In the interim, an arbitrary figure of 10% less than Lenal Company, Inc., selling price and a 2% cash discount is to be allowed to Lenal Company of the South. 4. Invoices to be made to Pepper Supply which will assume responsibility of payments on the 19th prox. basis * * *."

its customers in the amount of $21,982.55, and for a ten percent discount amounting to $6,729.12.[5] And despite the fact that the defense of payment was not mentioned in the pre-trial conference order or set forth affirmatively in the answer, as required by Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A., the trial court also permitted the defendants to offer cancelled checks totaling $87,504.29 as evidence of payments made by defendants and by companies under their control to Lenal.

The only evidence to support the contention that the checks aggregating $87,504.29 represent payments to Lenal is found in the testimony of Albert Lambert, a former secretary treasurer of plaintiff corporation. Defendants' counsel adduced this evidence by handing various cancelled checks to Lambert, who, after examining the instruments, identified them as checks drawn by Pepper Supply Company or Pepper Appliance Company either in favor of Lenal or indorsed to its credit. Lambert was then asked to examine Lenal's account receivable ledger and state whether or not Pepper's account showed a corresponding credit entry for each check. Lambert found corresponding credit entries for some checks and for others no correspond-

ing entry was found. But, Lambert did not testify that any of these checks were delivered and received in payment of accounts due Lenal nor did any other witness so testify. In other words, despite the fact that defendants were authors of the checks and were present at the trial and gave testimony as to other facts in issue, the principal fact in question—whether or not these checks represented payments rather than loans to Lenal and, if payments, whether or not they should have been credited against accounts sued upon—was left entirely to inference.

■ Turning now to the material testimony with reference to specific checks, the record discloses that the check dated November 13, 1946 in the amount of $20,000 and the two checks dated November 21, 1946 in the amounts of $15,000 and $5,000 were received by Lenal and Pepper Supply Company's ledger account on Lenal's books was credited on November 16, 1946 and November 22, 1946 with the total amount of these checks.[6] Notwithstanding this uncontroverted evidence that defendants received credit on the books of Lenal for these three checks aggregating $40,000.00 the trial court permitted the jury to consider the extent to which defendants might

5. Under the terms of the agreement set forth in footnote 4, supra, defendants were only responsible for an amount ten percent less than Lenal's selling price.

6. With reference to the check dated November 13, 1946 in the amount of $20,000, the witness Lambert testified as follows:

"A. It is indorsed pay to the order of Manufacturers Trust Company, Lenal Company, Incorporated, Special account.

"Q. Will you see if proper credit is given Lenal? A. It shows it checked off.

"The Court: On what date does it show? A. It shows a credit to the account on November 16th of $20,000.

"Q. Was that $20,000 check credited to Pepper Supply Company on the books of Lenal Company? A. Oh, yes."

With reference to the check dated November 21, 1946 in the amount of $15,000 Lambert testified as follows:

"Q. Do you find that $15,000 on the credit side to Pepper Supply Co.? A. Not in this group of credits.

"Q. At any place in there? A. I do not see it anywhere."

The witness was then handed the check dated November 21, 1946 in the amount of $5,000 and was asked:

"Q. Do you find that listed as a credit to Pepper Supply? A. It does not appear here."

However, the witness then testified: "There is a credit on the books of $20,000 but it is not a corresponding date. The date on the books here is November 22, of $20,000, there is another date for November 16, for $20,000."

The witness W. J. Botto testified with reference to the two checks dated November 21, 1946, as follows:

"A. There were two checks at that time, one for $15,000 and one for $5,000, making a total of $20,000. I can identify that one (referring to the check for $15,000), the credit is for $20,000 on the books and the date is November 22nd.

"Q. Mr. Botto, I also hand you herewith another check dated November 21, 1946 * * * and ask if that check is shown as a credit *. * *? A. Yes, it is."

be entitled to credit for such checks against the $67,291.25.[7] This was error and the trial court should have instructed the jury that they were not entitled to consider these three checks as a credit against the $67,291.-25.

As to the check dated November 29, 1946 in the amount of $20,000; the check dated January 20, 1947 in the amount of $5,000; the two checks dated February 24, 1947, each in the amount of $2,500; and the two checks dated February 27, 1947, each in the amount of $5,000, the evidence shows that there were no corresponding credit entries for these checks on Lenal's accounts receivable ledger. The plaintiff contended at the trial, as they do now, that these six checks aggregating $40,000 represented loans from defendants to Lenal. However, plaintiffs did not have available the books of original entry of Lenal to offer in support of their contention but plaintiff's failure to produce them is excusable inasmuch as Lenal's books and records were and had been for forty-eight days prior to the trial stored in a warehouse in the Southern District of New York in the custody of its trustee in bankruptcy and furthermore no issue as to these matters had been formulated, either in the pleadings or at the pre-trial conference.

In addition to the foregoing the defendants also offered as evidence of payment a check dated March 5, 1947, in the amount of $7,504.79. And for this check there is no corresponding entry on Pepper Supply Company's account on Lenal's accounts receivable ledger.

After the trial plaintiff obtained the books and records of Lenal from the trustee in bankruptcy and in support of its motion for a new trial submitted photostatic copies of original pages from pertinent books and records relating to the checks intro-duced in evidence by the defendants. The photostatic copies disclose that the check dated November 29, 1946 in the amount of $20,000; the check dated January 20, 1947 in the amount of $5,000; the two checks dated February 24, 1947 each in the amount of $2,500; and the two checks dated February 27, 1947, each in the amount of $5,-000, represented loans to Lenal rather than payments on account. As to the check dated March 5, 1947, in the amount of $7,504.79, the plaintiff filed the affidavits of the Vice President of the Capital City National Bank of Tallahassee, Florida, the Assistant Cashier of the Chase National Bank of the City of New York, and the Assistant Manager of Manufacturers Trust Company, New York, New York, which in substance recite that pursuant to instructions by the maker, Pepper Supply Company, the sum of $7,500[8] was transmitted from the Capital City National Bank to Chase National Bank, covering payment to Manufacturers Trust for account of Lenal, remitted for account of Builders Wholesale, Cleveland, Mississippi.

Under the circumstances presented, and quite independent of the error in the charge, we are of opinion that the trial court erred in denying plaintiff's motion for a new trial. It is a principle well recognized in the federal courts that the granting or refusing of a new trial is a matter resting within the discretion of the trial court. The term "discretion", however, when invoked as a guide to judicial action, means a sound discretion, exercised with regard to what is right and in the interests of justice.[9] And an appellate court is not bound to stay its hand and place its stamp of approval on a case when it feels that injustice may result. Quite to the contrary, it is definitely recognized in numerous decisions that an abuse of discretion is an exception to the

7. This portion of the court's charge to the jury reads as follows: " * * * the total of the money as shown by those exhibits amounts to $87,504.79. Now gentlemen, the proof as to whether or not and the extent to which defendant is entitled to those items as a credit against the $67,291.25 is a question for you. You will find that the first four of those exhibits deal with payments made in No-vember, the first one being on November 13th and the last one being on November 29th * * *."

8. The difference between $7,504.79, the amount of the check, and $7,500.00 represents the cost of transmitting the $7,-500.00 by telegraph.

9. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520.

rule that the granting or refusing of a new trial is not assignable as error.[10]

Upon the record before us, we hold that it was an abuse of discretion to deny plaintiff's motion for a new trial.

Reversed and remanded.

10. See Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 408–409, and cases there cited.