Taunice J. VIDRINE, Plaintiff-Appellant,

v.

The KANSAS CITY SOUTHERN RAIL-
WAY CO., Defendant-Appellee.

Harold D. VIDRINE et al., Plaintiffs-
Appellants,

v.

The KANSAS CITY SOUTHERN RAIL-
WAY CO., Defendant-Appellee.

No. 71-3581.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1972.

Rehearing Denied Oct. 17, 1972.

I. Jackson Burson, Jr., J. Nilas Young, Eunice, La., Young & Burson, Eunice, La., for Taunice J. Vidrine and Harold D. Vidrine.

John B. Scofield, Lake Charles, La., for defendant, appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

RIVES, Circuit Judge:

The plaintiffs in two cases consolidated for trial sought to recover damages resulting from a collision between an automobile and a freight train. The questions presented on appeal concern whether the district court abused its discretion in denying motions for new trial. In one of the cases the plaintiff was Taunice Vidrine, driver of the automobile, who sought to recover damages for his own personal injuries and for the death of his wife, Mrs. Agnes Vidrine. The jury's verdict denied him relief on the ground that he was guilty of negligence which was a proximate cause of the accident. He claims that the district court abused its discretion in denying his motion for new trial because the jury's verdict was against the clear weight of the evidence. In the other case the plaintiffs were either guest passengers in the automobile or heirs of the decedent, Mrs. Agnes Vidrine, or both, who sought to recover damages for their own personal injuries or for the death of Mrs. Vidrine or for both. They claim that the district court abused its discretion in refusing to hold that the damages awarded by the jury were inadequate as a matter of law and in denying a new trial limited to the issue of damages or, in the alternative, a new trial on all issues. As to Taunice Vidrine, the driver, and as to the heirs of Mrs. Vidrine, we affirm. As to one of the guest passengers, we affirm; and as to the other guest passengers, we reverse and remand for a new trial on the issues both of liability and of damages.

On Sunday morning, August 3, 1969, Mr. and Mrs. Vidrine and members of their family attended early morning mass at Basile, Louisiana, and then left on about an eighty-mile trip to visit another daughter in Leesville, Louisiana. Their six-passenger Pontiac automobile carried five people in the front seat, including a three-year-old girl in her father's lap, and five people in the back seat, including a four-week-old girl in her mother's lap. They passed safely the first sixty miles of the trip to the City of DeRidder, Louisiana. There they stopped at a service station to use the rest rooms. Then they proceeded west on Mahlon Street, a two-laned one-way street, and in the left hand lane approached the railroad crossing. The freight train consisting of 166 cars and six engines, altogether over 1½ miles long, approached the crossing going south. As the Vidrine automobile attempted to cross the railroad track, it was struck by the locomotive and carried between 700 and 900 feet. As a result of the collision, all of the occupants of the automobile, except the four-week-old baby, were injured. Mrs. Agnes Vidrine lingered in a hospital for 49 days before dying from her injuries.

There was a three-day trial commencing on June 30, 1971, and concluding on July 2, 1971. At the conclusion of the evidence the district court denied the defendant's motion for a directed verdict. The court exercised its discretion to re-

quire the six-man jury to return a special verdict as permitted by Rule 49(a), F.R.Civ.P. As provided by that rule the court gave the jury full explanation and instructions to enable them to make findings upon each issue. Since no question is raised as to the court's charge, it is not necessary to set out the detailed instructions as to the respective duties of the defendant and of the plaintiffs. More pertinent to the issues on appeal are the court's instructions to the jury as to damages. Seven guest passengers in the Vidrine vehicle at the time of the collision claimed damages for their own personal injuries, namely: Harold D. Vidrine; Linda Smith Vidrine, Harold's wife; Shonda Vidrine, Harold's three-year-old daughter; Nelda Faye Vidrine; Beverly Medina Vidrine; Loretta Hebert Vidrine; and Roxanna Vidrine. Included in their claim for these personal injuries are claims for medical expenses occasioned by the accident, lost wages, impairment of future earning capacity, physical and mental pain and suffering, and permanent disability or disfigurement. The court charged that, "Should you find liability, each person would be entitled to his proven damages, you should not average out or divide up a total sum among the injured in reaching an amount of damages." In addition to the personal injury claims of the seven guest passengers, six surviving children of Mrs. Agnes Vidrine claimed damages because of her wrongful death. One item of such damages is the loss of companionship, love and affection which these children have suffered and will suffer as a result of the death of their mother. As an additional element of damages, each of the six children could recover one-twelfth of the entire medical bills which the mother, Mrs. Agnes Vidrine, incurred in her last illness and each could recover one-sixth of her funeral expenses.

In its special verdict the jury found that the defendant was negligent and that its negligence was a proximate cause of the accident; that Taunice Vidrine, the driver of the automobile, was negligent and that his negligence was a proximate cause of the accident. The jury found that none of the guest passengers was guilty of negligence. As to the damages, the jury found as follows:

| | | |
|---|---|---:|
| A. | For Harold D. Vidrine | |
| | 1. for his personal injuries | $500.00 |
| | 2. for the medical expenses of his wife, Linda Smith Vidrine, | $500.00 |
| | 3. for the medical expenses of his daughter, Shonda Vidrine, | $3,000.00 |
| | 4. for the death of his mother, Agnes Vidrine, | $3,000.00 |
| B. | For Linda Smith Vidrine | –0– |
| C. | For Shonda Vidrine | –0– |
| D. | For Rogers Vidrine on behalf of his daughter, Roxanna Vidrine | $500.00 |
| E. | For Taunice Vidrine on behalf of his daughter Nelda Faye Vidrine, | |
| | 1. for her personal injuries | $500.00 |
| | 2. for the death of her mother, Agnes Vidrine, | $3,000.00 |
| F. | For Taunice Vidrine on behalf of his daughter Beverly Medina Vidrine, | |
| | 1. for her personal injuries | $3,000.00 |
| | 2. for the death of her mother, Agnes Vidrine, | $3,000.00 |
| G. | For Loretta Hebert Vidrine for her personal injuries | $500.00 |
| H. | For Rogers Vidrine for the death of his mother, Agnes Vidrine, | $3,000.00 |
| I. | For Wilda Mae Vidrine Taylor for the death of her mother, Agnes Vidrine, | $3,000.00 |
| J. | For Barbara Lane Vidrine Olivier for the death of her mother, Agnes Vidrine, | $3,000.00 |

Judgment was entered pursuant to the jury's special verdict. Thereafter the plaintiffs moved the court for a new trial limited to a determination of the damages sustained by the plaintiffs, claiming that the assessment of damages was inadequate as a matter of law, and, in the alternative, the plaintiffs moved the court to award plaintiffs a new trial on all issues in the case. The plaintiff Taunice Vidrine separately moved the court to grant him a new trial on the ground that the weight of the evidence did not support the verdict that he was negligent and that his negligence was a proximate cause of the collision. The court denied the motions for new trial without explanation. Each of the plaintiffs filed a notice of appeal from the final judgment and from the judgment de-

nying the several motions for new trial. The issues on appeal, however, are limited to questions of whether the district court abused its discretion in denying the motions for new trial.

### I.

Though the Supreme Court has never clearly so held,[1] the Fifth Circuit is now firmly committed to the doctrine restated in Whiteman v. Pitrie, 5 Cir. 1955, 220 F.2d 914, 919:

> "A simple restatement of the position of this Court is as follows: 'In reviewing a motion for new trial based on the ground of the inadequacy or excessiveness of the verdict, as well as one based on the ground that the verdict is against the weight of the evidence, the rule applies that ' * * * an abuse of discretion is an exception to the rule that the granting or refusing of a new trial is not assignable as error.' Commercial Credit Corporation v. Pepper, *supra* [187 F. 2d 71]; Houston Coca-Cola Bottling Co. v. Kelley, 5 Cir., 131 F.2d 627, 628; Fort Worth & Denver Ry. Co. v. Roach, 5 Cir., 219 F.2d 351." [2]

Rule 59(a), F.R.Civ.P., permits the granting of a new trial to all or any of the parties and on all or part of the issues. It is, however, well settled that a new trial on part of the issues "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Products Co. v. Champlin Co., 1931, 283 U.S. 494, 500,[3] 51 S.Ct. 513, 515, 75 L.Ed. 1188.

### II.

Pursuant to the finding of the special verdict that Taunice Vidrine was negligent and that his negligence was a proximate cause of the accident, the district court entered judgment dismissing with prejudice the demands of the plaintiff Taunice Vidrine. Clearly, the district court did not abuse its discretion in denying Taunice Vidrine's motion for new trial.

Taunice Vidrine testified that he was familiar with the crossing but did not stop or slow down before attempting to drive over it at a speed of 25 miles per hour. He did not see the approaching train but relied on a signal device at the crossing. That device contains a warning, "3 TRACKS" "STOP ON RED SIGNAL." It is an automatic signal device with a set of two red lights which blink alternately, and it is also equipped with a bell.

The most hotly contested issue on liability was whether that signal device was operating at the time of the collision. Taunice Vidrine and the several occupants of the car who testified all swore that the automatic signal device was not operating. Their testimony was corroborated to some extent by a Mr. and Mrs. Harvey Johnson, whose car was following a short distance behind the Vidrine car. The Johnsons testified they did not see the lights flashing or hear the bell ringing.

On the defendant's side, the engineer and the two brakemen who were riding with him on the locomotive testified that the signal device was operating, and that two cars had stopped in the right lane of Mahlon Street for the crossing

---

1. See Fairmount Glass Works v. Cub Fork Coal Co., 1933, 287 U.S. 474, 481–482, 53 S.Ct. 252, 77 L.Ed. 439; Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603; Montgomery Ward Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Affolder v. N.Y.C. & St.L. R. Co., 1950, 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683.

2. Many other Fifth Circuit cases are collected in Hatfield in Seaboard Air Line R. Co., 5 Cir. 1968, 396 F.2d 721, 723 n. 4.

3. That case is followed in Hatfield v. Seaboard Air Line R. Co., 5 Cir. 1968, 396 F.2d 721, 724, and is developed and elaborated on in Williams v. Slade, 5 Cir. 1970, 431 F.2d 605, 608, 609.

before the Vidrine car passed them in the left lane. The engineer also swore that he walked back to the crossing after the train came to a stop and found the signal device still operating. Their testimony was corroborated by a witness who testified that he was sitting on the front porch of the house at the northeast corner of the intersection, and was further corroborated by the defendant's maintenance engineer who testified that he inspected the automatic signal device on the afternoon of the accident and found it in proper operating condition. The jurors and the district judge saw and heard the witnesses and were in better position to determine the truth as to whether the signal device was operating and as to all other issues.[4] Certainly, in denying Taunice Vidrine's motion for new trial, the district court was not guilty of any abuse of discretion.

### III.

■ Six of Mrs. Agnes Vidrine's children filed formal acts of acceptance of her succession and each of them thereby assumed liability for one-sixth of her funeral expenses and one-twelfth of her medical expenses. Those six chil-

dren sued for damages for Mrs. Vidrine's death. Under Louisiana law surviving heirs who assume responsibility for any portion of a decedent's medical and funeral expenses are entitled to claim them from a tort-feasor in a wrongful death action.[5] The district court charged the jury as to claims of each of the six children for one-twelfth of Mrs. Vidrine's medical expenses and one-sixth of her funeral expenses, and that in addition each of them, if the defendant was found liable, could recover for the injuries suffered by Mrs. Vidrine prior to her death and for the injuries sustained by each of the six children because of the mother's death. Included in the court's instruction was the following:

"* * * If you should find for the Plaintiff in this case, you may also consider as an item of damages the loss of companionship, love, and affection, which these children have suffered and will suffer as a result of the death of their mother.

"There is no rule to serve as a guide in placing monetary value on the element of loss of love and affection. You may, however, consider the rela-

---

4. Of course, as in practically all railroad crossing accidents, there were many other issues as to both negligence and contributory negligence, such as whether the train bell and whistle were sounded continuously for at least 300 yards before reaching the crossing, whether the train was going only 12 miles per hour or was exceeding the speed limit of 35 miles per hour, whether the three crew members on the locomotive maintained the proper lookout, and whether the driver and occupants of the automobile maintained the proper lookout. The brakeman seated in the center first realized that a collision was imminent and called "big hole," the signal to make an emergency stop. The brakeman on the side from which the automobile approached testified that he saw two other cars stop just before the collision, but admitted that he did not see the Vidrine vehicle. The engineer who was seated farthest from the approaching automobile testified that he thought the Vidrine car was going to stop because it

was going slow approaching the crossing. The court charged that crew members are not negligent in assuming that an automobile will stop before attempting to cross a railroad track, and persisting in such belief so long as it has a reasonable basis. The driver and occupants of the automobile would have had a clear view of the approaching train if they had looked to the right. The collision occurred at about 10:00 o'clock on a bright, sunshiny August morning. Only one occupant of the car, Loretta Vidrine, saw the train just before the collision and testified, "I hollered 'look at the train' and it hit us." On the other hand, the jury could find that the driver and occupants were justified in relying upon the automatic signal device. Whether that device was operating was an extremely important issue.

5. The defendant-appellee does not question the authorities collected on pages 26 and 27 of the plaintiffs-appellants' brief for this proposition of Louisiana law.

tionship of the deceased and those who survived her in fixing the amount of these damages. To this end you may take into account the closeness of the ties between the parties, the degree of love and affection that existed between them, the age of the parties involved, the nature of their family relationship in the past as well as the probable duration of this relationship in the future had this accident not occurred. You may also consider as a separate element of damages the grief, mental anguish, and emotional shock suffered by these children because of the death of their mother. The six children (some of whom were also guest passengers in the car) are: (1) Harold D. Vidrine, (2) Rodgers [sic] Vidrine, (3) Nelda Faye Vidrine, (4) Beverly Medina Vidrine, (5) Barbara Lane Vidrine Olivier, (6) Wilda Mae Vidrine Taylor."

(App. 659, 660.)

These six plaintiffs calculated their share of medical (1/12 each) and funeral (1/6 each) expenses to be $1163.37. The jury awarded to each of them a lump sum of $3,000.00 for the death of his or her mother. On appeal they calculate that the resulting award for their mother's 49 days of pain and suffering, plus each child's grief, mental anguish, emotional shock, and loss of companionship, love and affection would be $1,836.63 ($3,000.00 minus $1,163.37). That would make the aggregate award of $11,019.78 for these intangible elements of damage for the death of Mrs. Vidrine. While the evidence showed that Mrs. Vidrine remained conscious during the entire 49 days and suffered greatly, and that each of the children also suffered greatly from mental anguish and loss of love, affection and guidance, etc., the jury in the first instance could adopt its own guide as to the monetary value of these intangible elements, and the district judge had a wide discretion in his review of the jury's findings. The medical and funeral expenses have never been questioned as to either propriety or

amount. Their determination requires no more than a mathematical calculation which can be done as well on appeal as at the trial. That is not true as to the intangible elements of damage. The jury and the trial judge were in better position to adopt a suitable guide for their monetary value and to determine their amount than is this Court. The proposition last stated is sustained, we think, by the careful analysis of Fairmount Glass Works v. Cub Fork Coal Co., 1933, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; contained in 6A Moore's Federal Practice ¶ 59.08 [6], pp. 3830–3834.

In awarding the same sum, $3,000.00, to each of the six children of Mrs. Vidrine who sued for damages resulting from her death, it is possible that the jury failed to follow the court's instruction to measure each child's loss of guidance, grief, mental anguish, and emotional shock suffered because of the death of his or her mother. In his closing argument the plaintiffs' counsel asked for different consideration only for Beverly Medina, saying:

"I will point out to you right now that all five of the major children we are claiming the same amount for the death of their mother, regardless of what we asked for in the petition we feel this is what we have proven. A total of $27,500 for the five major children, for the young child, Medina, the baby of the family who is only fourteen years old at an age where she needs her mother more than at any other time, we added $5,000 for the loss of guidance that she is going to suffer, would make the claim $32,500."

(App. 592, 593.) As to the other minor child, Nelda Faye, plaintiffs' counsel argued:

"Now for the death of her mother, she was seventeen at the time of the accident but she is twenty now, so while we pondered and thought about it we

figured that she was probably due about the same amount for the loss of her mother as her other adult brothers and sisters, for $27,500 which I will again remind you which we are suggesting is a figure which is fair and just, for all of the adult heirs of Agnes Vidrine for the loss of their mother."

(App. 597.) It cannot be reasonably contended that the jury should be faulted for making the same award to each of the six children except possibly to Beverly Medina, and, even as to her we cannot find that the jury committed such grave error as to require us to hold that the district judge abused his discretion in denying the plaintiffs' motion for new trial. We hold that the award of $3,000.00 to each of the six children who sued for damages for the death of their mother, Mrs. Agnes Vidrine, was not so inadequate as to require the district judge to exercise a discretion to grant the plaintiffs' motion for new trial on the issue of damages for the death of Mrs. Vidrine.

### IV.

■ We come now to the most difficult problems, those concerning the personal injury claims of seven guest passengers. Each claimant should, of course, be considered separately,[6] though comparison may be made of the near uniformity of the jury's total awards, $500.00 each on behalf of five claimants, and $3,000.00 each on behalf of two claimants. We therefore discuss separately, but briefly, the claims on behalf of each of the seven guest passengers in the order in which they first appear in the jury's special verdict.

(1) Harold Vidrine.

■ The jury awarded to Harold Vidrine $500.00 "for his own personal injuries."

The award was less than one-third of Harold's actual medical expenses,

$1,511.50. His lost earnings were reasonably estimated at about $1,500.00. Both bones of Harold's left arm were fractured near the wrist, there were multiple fractures of his pelvis, three fractured ribs, a hematoma in the left pelvis with pressure on his bladder and ureter. He was confined to the hospital for fifteen days and to his home for an additional six to eight weeks. Eventually he recovered without residual disabilities.

(2) Linda Smith Vidrine.

■ On behalf of Linda Smith Vidrine, Harold's wife, the jury awarded to her husband $500.00 "for medical expenses," but to Linda herself "for her own personal injuries" "-0-."

Linda's actual medical expenses came to $462.17. She was not seriously or permanently injured. She was, however, hospitalized for five days with a badly bruised leg and with excessive bleeding from a previous pregnancy.

(3) Shonda Vidrine.

■ On behalf of Shonda Vidrine, Harold's three-year-old daughter, the jury awarded to her father $3,000.00 "for the medical expenses," but as "the amount of damages, if any, sustained by Shonda Vidrine (and claimed by her father, Harold Vidrine, on her behalf)" the jury answered "-0-."

The award of $3,000.00 was close to Shonda's actual medical expenses, $3,113.34. Shonda received severe personal injuries, but made a remarkable recovery. Shonda had lacerations about the scalp, an accumulation of blood between the scalp and the skull, a severe contusion and swelling of the right eye, a puncture wound in her abdominal area, fractures of the right femur and thighbone ¾ inches below the hip, a chip fracture of the small bone of the right leg at the knee, an unusual frac-

---

6. See the court's instructions to the jury quoted *supra*.

ture of the tibia and fibula of her right leg which required skeletal traction.[7] Shonda was in bed until about the time of her release from the hospital on August 22, 1969, that is for nineteen days. She remained in a body cast from the nipple to the toes on the right side and to the knee on the left side until September 17, 1969, when she was returned to the hospital for two days for removal of the cast. There remained a loss of function in the muscles by which she lifted her right foot, necessitating the application of a leg brace which she wore until November 7, 1969. Shonda suffered severe pain and possibly some permanent injury, and was continuing to report for six-month check-ups.

(4) Roxanna Vidrine.

 On behalf of Roxanna Vidrine, ten-year-old daughter of Rogers Vidrine, the jury answered "the amount of damage sustained by Roxanna Vidrine, (and claimed by her father, Rogers Vidrine, on her behalf)" as "$500.00."

The jury was not questioned separately as to Roxanna's medical expenses. The $500.00 award exceeded those expenses which came to only $114.00. Roxanna's injury consisted of a complete fracture of her left clavicle. She was not hospitalized but was treated by immobilization in a clavicle strap and some pain killers, and was considered by her physician as completely healed on September 5, 1969, a month after the accident.

(5) Nelda Faye Vidrine.

 On behalf of Nelda Faye Vidrine, nineteen-year-old daughter of Taunice Vidrine, the jury answered "the amount of damages, if any, sustained by Nelda Faye Vidrine (and claimed by her father on her behalf)" as "$500.00." Nelda Faye's actual medical expenses were $1,239.44, nearly two and one-half times the amount of the award. How-

ever, Taunice Vidrine's contributory negligence precluded his recovery of those medical expenses. Nelda Faye was hospitalized for thirteen days. She suffered a deep bruise in her left flank, a bruised left kidney, had blood in her urine for twelve days, multiple bruises and deep blood clots in her right flank, thigh, and leg, bruises over the left side of her back, and a laceration over her left eyebrow which was sutured. She recovered without any disability.

(6) Beverly Medina Vidrine.

 On behalf of Beverly Medina Vidrine, twelve-year-old daughter of Taunice Vidrine, the jury answered "the amount of damages, if any, sustained by Beverly Medina Vidrine (and claimed by her father on her behalf) * * * for her own personal injuries" as "$3,000.-00."

The jury did not answer separately as to her medical expenses, and Taunice Vidrine was precluded by his contributory negligence from recovering those expenses, which amounted to $1,239.44. She was hospitalized nineteen days and spent two more weeks in bed at home. Beverly Medina suffered multiple pelvic fractures and a ruptured urinary bladder, abdominal surgery, repair of two perforations in her bladder, removal of numerous blood clots and aspiration of approximately 55 ccs of blood from her bladder. Her surgeon testified that her multiple pelvic injuries may have altered the shape of her pelvis so that she might have difficulty in delivering a child, that her injuries were painful and left surgical scars on her abdomen.

(7) Loretta Hebert Vidrine.

 The jury awarded Loretta Hebert Vidrine, the wife of Taunice Vidrine's deceased son, "for her own personal injuries" "$500.00."

This award was somewhat less than her medical expenses, which came to

---

7. According to the surgeon: "Skeletal traction is a form of traction whereby the bone of the lower leg * * * is drilled through with a small stainless steel or chromic threaded pin for the purpose of applying traction * * * to pull the bones back into acceptable positions and also to gain some relief for the patient."

$550.39. She was earning in the kitchen of the family cafe five dollars a day plus board and missed the week she was in the hospital plus three weeks in bed at home. She was hospitalized for seven days with a chip fracture in the pelvic area, lacerations on her forehead which required suturing, a bruised neck with muscle spasms, and bruises over her left chest, left hip, both knees and both ankles. She was released from medical treatment October 18, 1969, two and a half months after the accident without any residual disability.

When the amounts of the awards of damages for the personal injuries of the seven guest passengers are considered in connection with the nearly uniform pattern of the awards, we cannot escape the conclusion that the jury failed to obey the court's instructions to make each of the awards on the merits of the individual case, and, in all probability rendered a compromise verdict, considering together the question of the defendant's liability and the extent of the resultant injuries. When the amounts of the awards are considered in connection with the other evidence of illegality of the verdict, we think that each of the awards, except that to Roxanna, was so grossly inadequate as to amount to legal error. The district court should have exercised its discretion to nullify seriously erroneous results and to prevent miscarriages of justice. See Whiteman v. Pitrie, *supra*, 220 F.2d at 919.

The judgment of the district court denying the motions for new trial on behalf of guest passengers Harold D. Vidrine, Linda Smith Vidrine, Shonda Vidrine, Nelda Faye Vidrine, Beverly Medina Vidrine and Loretta Hebert Vidrine is therefore reversed and the case is remanded for a new trial on behalf of the six named guest passengers on all issues, both of liability and of damages. In all other respects the judgments are affirmed. Costs are taxed against the defendant-appellee.

Affirmed in part and in part reversed and remanded.