CHARLES v. NORFOLK & WESTERN RY. CO.

No. 10083.

United States Court of Appeals Seventh Circuit.

March 12, 1951.

Rehearing Denied May 16, 1951.

692

Henry C. Ferguson, Leroy G. Charles and James G. Lemon, Jr., all of Chicago, Ill., for appellant.

Charles F. White, Herbert C. De Young, Chicago, Ill., for appellee.

Before KERNER, DUFFY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff appeals from a judgment on a verdict for defendant and from an order overruling her motion for new trial and in arrest of judgment in her suit for assault and battery and false imprisonment based on her expulsion from a train and arrest and imprisonment following her refusal to transfer to a car for colored passengers.

■ There was considerable conflict in the evidence as to the degree of force used in putting plaintiff off the train and whether or not the conductor himself actively participated in the expulsion. Since plaintiff made no motion for directed verdict she may not, on appeal, challenge the sufficiency of the evidence to support the verdict for defendant. Barron and Holtzoff, Federal Practice and Procedure, § 1081; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350; and Edwards v. Craig, 7 Cir., 138 F.2d 608. The appeal, however, does present a serious question whether under the circumstances disclosed by the record she was entitled to a new trial.

We state the facts out of which this action arose as they are disclosed by undisputed evidence or established by the evidence of the defendant. On February 5, 1944, plaintiff was a passenger on a train owned and operated by defendant. She

was traveling from Chicago to Petersburg, Virginia, to visit her husband, a Chicago attorney then in military service in Camp Lee. She had transferred from another train to defendant's in Cincinnati, Ohio, and was riding in a coach in which she was the only colored passenger. While the train was still in West Virginia, before it reached the Virginia line, the conductor asked her to move to the head car and she refused, whereupon he told her he would have her moved when he got into Roanoke, Virginia. The passenger brakeman also asked her to move while they were still in West Virginia. The conductor wired ahead about her to the superintendent, a special officer, and the station master at Roanoke. When the train reached Roanoke, one Keister, the special officer who was in the employ of defendant and certified by the Judge of the City Court in Roanoke to act as such, met the train in response to directions from the station master, and the passenger brakeman took him through the car to point plaintiff out to him. He told her of the Virginia statute requiring segregation and told her they would move her into the other car. When he picked up her coat and took her arm she resisted, whereupon he asked a military policeman in the car to help him move her. There was some scuffling and she was taken off the train. Keister called for the patrol car and plaintiff was taken to the police station where Keister preferred charges against her of disorderly conduct and violation of § 3983 of the Virginia Code. Although it was then only 11:00 o'clock on a Saturday morning, plaintiff was placed in detention instead of being brought into court, and she was held in detention without food and with at most only one cup of water (which she denied receiving) until 10:30 that evening when she was released on $251.50 bond. She testified that she had obtained the cash for this bond by paying a colored porter in the jail $10 to get her a lawyer and he, in turn, had wired her mother-in-law for $300; that upon her release she continued her journey to Petersburg, arriving there early Sunday morning, February 6; and that her husband took her out to the hospital on the Army Post for treatment of her injuries

and went back with her to Roanoke for her trial the following day. She was found guilty of disorderly conduct and fined $5 and costs amounting to $6.50. She stated that she paid her lawyer $50 in addition to the $10 she had given him while she was in jail.

Plaintiff's testimony described an ugly story of brutality in the force used by two men in dragging her off the train and throwing her luggage after her and her detention for almost twelve hours in a filthy, unsanitary cell, without the food or water or medical attention she requested. Defendant maintains that her story is a complete fabrication, and denies that its agents used any force against her or that she sustained any injuries during her removal from the train and detention in the jail.

It is undisputed that until efforts were made to move her, there had been no question as to her behavior. She had been sitting quietly in her seat until the officer started to pick up her effects, and the officer stated that the only reason he placed charges against her was that she was a colored woman riding in a coach with white people, and if it had not been for that he would not have bothered her. The conductor testified that he told her he would have her moved and that he sent the telegram which set the machinery in motion for her removal, arrest and detention.

The Virginia statute requiring segregation of white and colored interstate passengers was held invalid in the case of Morgan v. Com. of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317, decided on June 3, 1946, after the occurrence of the acts complained of in this case. It follows that plaintiff was entitled to remain in the seat she was occupying in defendant's train, without interference by defendant's agents and employees, and was entitled to resist their illegal efforts to move her since, as stated by defendant's agent, that removal was required solely on the ground of her color. If the jury believed plaintiff's evidence, the removal and imprisonment were accompanied and aggravated by unnecessary force and violence resulting in injury to her. But even the undisputed evidence established an assault, ar-

rest without warrant, and detention for almost twelve hours on charges preferred by Keister after he was summoned by another agent of defendant to enforce an invalid statute. Plaintiff did not, however, move for a directed verdict, and the jury found defendant not guilty of the charges. She thereupon moved to set aside the verdict and for a new trial on the ground that the verdict was contrary to law; that it was contrary to the evidence, and resulted from passion and prejudice; and that as the result of an erroneous instruction the court wrongly required plaintiff to prove every cause of action set forth before she would be entitled to a verdict, thus, in effect, directing the verdict against her on the causes of action admitted by defendant's own evidence. The court denied the motion for a new trial and entered judgment on the verdict for defendant, with costs including $231 for travel, subsistence, and per diem for three witnesses brought by defendant from Virginia for the trial.

In denying the motion for new trial, the judge expressed his disagreement with the verdict, stating that had he been trying the case he would have found the defendant guilty and assessed substantial damages. However, he considered that plaintiff's counsel was responsible for the error, if any, which seemed to him to arise from the form of the action, lumping all charges in one instead of separating the various causes of action as false arrest, false imprisonment and malicious prosecution. It was for this reason that he gave the following instruction at the request of defendant and over plaintiff's objection and which he refused to consider as a basis for granting the motion for new trial:

"You are instructed that before the plaintiff can recover against the defendant in this case, the plaintiff must prove by a preponderance or greater weight of the evidence that on February 5, 1944, while she was riding as a passenger on defendant's train between Cincinnati, Ohio, and Petersburg, Virginia, at or near Roanoke, Virginia, she was wilfully, wantonly and maliciously and with great force and vi-

olence assaulted, beaten, injured and ejected from the defendant's train by the conductor of said train and by a special officer employed by said defendant and a military policeman called by said conductor, and she must further prove by a preponderance * * * that she was locked up or imprisoned upon the specific and direct instructions of said conductor without any reasonable or probable cause and that she was maliciously prosecuted by the employes and agents of the defendant acting in the course of their employment and that as a direct and proximate result of the above, plaintiff was injured and damaged as charged.

"If the plaintiff has failed to prove any one or more of the foregoing propositions by a preponderance * * * or if the evidence is evenly balanced and the jury are unable to say on which side is a preponderance of the evidence, or if the evidence preponderates in favor of the defendant, then the plaintiff cannot recover against the defendant."

 It is true that the trial judge gave painstaking attention and consideration to the issues in the case, and gave plaintiff every opportunity to make out a case, yet in view of this record it seems to us that not only the instruction above, to which plaintiff objected, but also others requested by plaintiff or acquiesced in by her appear to be misleading and confusing. This apparently stems from plaintiff's reliance on her own account of the brutality and violence of defendant's employees, particularly the conductor, with malice the gist of the action, as she stated in her complaint—what we might call aggravated offenses which would have justified substantial punitive damages if believed by the jury. Relying on that she failed to lay the groundwork for what we choose to call simple assault, false arrest and imprisonment on which action may be maintained irrespective of harm and without proof of "personal hostility or desire to offend." See Restatement of Torts, §§ 35, 44; 22 Am.Jur. pp. 369, 384; Crosswhite v. Barnes, 139 Va. 471, 124 S.E. 242, 40 A.L.R. 54; Lindquist v. Friedman's, Inc., 366 Ill. 232, 8 N.E.2d

625. The result was that under the instructions as given, including the one objected to, the jury had no alternative but to return its verdict for defendant if it disbelieved any part of her story, although the facts otherwise established actually spelled out a cause of action on which relief could well have been predicated. We are aware that the defense was based on the two-fold ground that its agents did not participate in plaintiff's removal but that it was accomplished by the special officer acting in the performance of his public duty pursuant to the Virginia Code, and that there was no unnecessary force and violence used in that removal. It is true that as a general rule a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority but employed and paid by the private person or corporation. However, we think that cloak of immunity should not be extended to cover such a situation as the one here involved, where the special officer's authority was invoked by defendant's conductor without probable cause. State statutes purporting to regulate racial association on interstate vehicles were long ago held to constitute an illegal interference with interstate commerce. See Hall v. DeCuir, 95 U.S. 485, 24 L.Ed. 547, cited with approval in Morgan v. Com. of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317.

■ Of course, it is true that ordinarily the granting or refusing of a new trial, being a matter within the discretion of the trial judge, is not subject to review. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147, and Fairmont Glass Works v. Cub Forks Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439. But in the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of *stare decisis* by what has been done in any similar situations, Kotteakos v. United States, 328 U.S. 750, 762, 66 S.Ct. 1239, 90 L.Ed. 1557.

■ Rule 59, Fed.Rules Civ.Proc. 28 U.S.C.A., recognizes the old common-law principle that it is the duty of a judge who is not satisfied with the verdict of the jury to set it aside and grant a new trial. As stated by Judge Parker, speaking for the court in Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354, which also involved an appeal by a plaintiff who had, by failing to move for a directed verdict, precluded itself from challenging the sufficiency of the evidence to support the verdict, "To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require." See also Murphy v. United States District Court, 9 Cir., 145 F.2d 1018, and Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 4 A.L.R. 2d 1064. True, this principle has ordinarily been applied in cases where damages were grossly excessive or inadequate, but we see no reason for limiting it to such cases, and it seems peculiarly applicable to the circumstances of this case. In the instant case, the trial judge expressed his dissatisfaction with the verdict and felt that an injustice had been done; an erroneous instruction was given the jury imposing a burden of proof upon plaintiff not required by the applicable law; the resulting judgment denied plaintiff even compensatory damages for her out-of-pocket expense which had resulted from her false arrest and imprisonment, and imposed upon her the costs of the suit. In this situation, we think there was a miscarriage of justice. It is one of the exceptional cases which call for a reversal.

The judgment of the District Court is reversed with directions to grant plaintiff a new trial.