104 So.2d 10 (1958)
Myrtle R. RUTH and her husband, William E. Ruth, Appellants,
v.
Elmer SORENSEN, Appellee.
Supreme Court of Florida.
March 21, 1958.
Rehearing Denied July 30, 1958.
*11 Paul L. Steiner, Miami, for appellants.
Henry Burnett and Fowler, White, Gillen, Yancey & Humkey, Miami, for appellee.
ROBERTS, Justice.
Plaintiff-appellants sued defendant-appellee to recover their respective damages as a result of injuries sustained by the plaintiff wife ("plaintiff" hereafter), when the car she was driving was hit by a car driven by defendant. The cause was submitted to the jury on the question of defendant's negligence, a verdict in favor of defendant was returned, plaintiffs' motion for new trial was denied, and this appeal from a judgment in favor of defendant has been perfected.
The accident occurred on a clear dry day at the intersection of 62nd Street and Northwest 2nd Avenue in Miami. Plaintiff and defendant were travelling in opposite directions on 62nd Street. Plaintiff stopped *12 at the intersection in obedience to the traffic signal, and it was while she was waiting for the light to change that defendant ran into the left front and side of her car. There was considerable traffic at the intersection, including cars on the cross-lane of traffic on Northwest 2nd Avenue. According to defendant's deposition (which was the only evidence adduced in his behalf), he was travelling at about 12 or 15 miles per hour when he came to the intersection and as he reached the crosswalk, the light changed from green to "caution". He proceeded into the intersection and, according to his statement, a car in the cross-lane of traffic on Northwest 2nd Avenue "pulled out in front of me, went through the light  broke the light, and pulled out in front of me, and I swerved to the left to avoid hitting them. Before I could get back to my right side, I glazed off a mudguard of [plaintiff's] automobile." As to whether there was space in the traffic lane on the right of plaintiff's car (his left) to have gone past her on that side, he said: "I wouldn't say anything about whether there was space or not. I don't know whether there was. But I swerved to avoid hitting the other car and before I could get her back to the right, I glazed off her mudguard."
Defendant also testified in his deposition that he did not blow his horn nor apply his brakes; that he did not know how far into the intersection the cross-traffic car had gone at the time he swerved to avoid it, nor how fast the cross-traffic car was travelling; he only knew that it "jumped" the light after having been at a dead stop. Although he testified positively that the cross-traffic car was not about to hit him, but that he was about to hit the cross-traffic car, in answer to the question, "Now, did you hit your brake at any time?" he said: "No. I swerved to avoid him. I couldn't hit the brake, because he was on top of me."
As noted, defendant could not remember whether there was space in the traffic lane to the right of plaintiff's car which he could have taken and thus avoided "swerving" around the cross-traffic car, which resulted in the collision with plaintiff's car. But plaintiff testified positively that there was. It was also shown (and this should be fairly obvious from defendant's description of the occurrence) that defendant could have avoided the accident by continuing his left-hand turn into the lane of traffic on Northwest 2nd Avenue not yet occupied by the cross-traffic car previously referred to.
Defendant admittedly suffered from arthritis and walked with a cane; and the police officer who investigated the accident testified that defendant walked in a very stooped position; that his motions were stiff and he had difficulty in walking and in looking from right to left. This witness said "He would have to twist his body from the hip and try to straighten up," when he wanted to look at the witness.
The driver of the cross-traffic car involved in the occurrence did not stop, and thus was not joined as a party defendant. But we are unable to see how, under any view that the jury could reasonably take of the occurrence, it could validly find that the driver of the cross-traffic car was solely responsible for defendant's running into plaintiff's car and injuring her. And yet this conclusion is required in order to justify a verdict exonerating the defendant. Regardless of whether the driver of the cross-traffic car was negligent in "jumping" the light (the only thing shown by this record as chargeable against him or her), the defendant might reasonably have been expected to stop at the intersection rather than enter it on a "caution" light, in view of his physical disabilities; he might reasonably have been expected to apply his brakes when he saw he was about to hit the cross-traffic car; and, if we take his word for it that he couldn't apply his brakes because the cross-traffic car was "on top of" him, it might be reasonably expected that he would continue to make the left turn into the clear lane of *13 traffic on Northwest 2nd Avenue or continue straight ahead on 62nd Street into the clear lane of traffic on plaintiff's right. And, in our opinion, a verdict absolving defendant from all blame for failing to do any one of these things is so contrary to the manifest weight and probative force of the evidence and the justice of the cause as to require that the verdict be set aside and a new trial granted. See Yappa v. Bennett, Fla. 1955, 80 So.2d 600; Labruzzo v. Atlantic Dredging & Construction Co., Fla. 1954, 73 So.2d 228; Renuart Lumber Yards, Inc. v. Levine, Fla. 1950, 49 So.2d 97.
It must, therefore, be held that the trial judge abused his discretion in denying the plaintiffs' motion for new trial; and, accordingly, the judgment must be reversed and the cause remanded for a new trial.
We have also considered the question, here argued by the parties, of whether a Florida appellate court is authorized to consider an assignment of error directed to the denial of a motion for new trial that attacked the verdict as contrary to the evidence and against its weight. The appellee contends that federal appellate courts will not review the sufficiency of the evidence except on an assignment of error based on the denial of a motion for directed verdict made at the close of all the evidence under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; that Rule 2.7 of the Florida Rules of Civil Procedure, 31 F.S.A., is patterned after and almost identical to Rule 50(b); and that, therefore, this court should follow the federal appellate courts in this respect.
The answer to this contention is that any limitation imposed upon appellate review of the evidence in federal courts stems from the mandate of the Seventh Amendment to the federal constitution (applicable to federal but not to state courts, Pearson v. Yewdall, 95 U.S. 294, 24 L.Ed. 436) and not from anything in Rule 50 of the Federal Rules of Civil Procedure.
The Seventh Amendment provides that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." In Capital Traction Company v. Hof, 1898, 174 U.S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873, Mr. Justice Gray related the history of the adoption of the Seventh Amendment and pointed out that "* * * by the rules of [the common] law no other mode of re-examination is allowed than upon a new trial, either granted by the court in which the first trial was had or to which the record was returnable, or ordered by an appellate court for error in law; and therefore that, unless a new trial has been granted in one of those two ways, facts once tried by a jury cannot be tried anew, by a jury or otherwise, in any court of the United States." (Emphasis added.)
Both the federal and the Florida rules of civil procedure preserve the right of a litigant to move for a new trial on the grounds theretofore existing. Federal Rule 59; Florida Rule 2.8. In the federal practice, as in the practice in the courts of this state, a recognized ground for a motion for new trial is that the verdict is contrary to the manifest weight of the evidence and the justice of the cause. Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 250, 61 S.Ct. 189, 85 L.Ed. 147; Moore's Federal Practice, 2d Ed., Vol. 5, p. 2341; Yappa v. Bennett, Fla. 1955, 80 So.2d 600. And it is the duty of the federal trial judge, as it is of the trial judge in this state, to set aside a verdict and grant a new trial on such ground where the ends of justice so require. Virginian Railway Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400; Charles v. Norfolk & Western Ry. Co., 7 Cir., 1951, 188 F.2d 691. The discretion of the trial judge in this respect may be invoked by the litigant in the federal trial court, under Rule 59 of the Federal *14 Rules of Civil Procedure, even though no motion for directed verdict or for judgment in accordance with such motion has been made under Rule 50. As stated by Moore in his Federal Practice, 2d Ed., § 59.04(5), p. 3715, in discussing Rule 59:
"The motion for new trial does not seek a final judgment, but, instead, that further and proper proceedings be taken. And while the motion may be made jointly or in the alternative, with a motion for judgment n.o.v. under Rule 50(b), there is no requirement that it be so made: the motion for new trial may be made on the grounds stated above [one of which was that the verdict is against the weight of the evidence] and related grounds, although no motion is made under 50 (b)."
So far, then, the powers and duties of the federal trial judge are the same as that of a trial judge in this state, insofar as setting aside a verdict and granting a new trial is concerned. But it is when we reach the appellate level that a cleavage between the state and the federal practice occurs. Thus, in the federal appellate practice because of the limitation imposed on federal appellate courts by the Seventh Amendment, as implemented by the Judiciary Act of 1789, 28 U.S.C.A. § 879[1], the appellate court is authorized to reverse a judgment and order a new trial only "for error in law" committed by the trial judge, Capital Traction Co. v. Hof, supra, 174 U.S. 1, 13, 19 S.Ct. 580. A motion for new trial on the ground that the verdict is against the manifest weight of the evidence is addressed to the judicial discretion of the trial judge; thus, the trial judge's ruling on the motion is not, ordinarily, reviewable by the federal appellate court since a reversal of such ruling would be based on an "error of fact" and not on "error in law." As stated in Een v. Consolidated Freightways, 8 Cir., 1955, 220 F.2d 82, 85, a federal appellate court "can only consider the question of the sufficiency of the evidence when that has been made a question of law and this can only be done by interposing a motion for directed verdict at the close of all the evidence." (But see Pettingill v. Fuller, 2 Cir., 1939, 107 F.2d 933, 936; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 483-486, 53 S.Ct. 252, 77 L.Ed. 439; Virginian Railway Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 4 A.L.R.2d 1064; DePascale v. Pennsylvania R. Co., 3 Cir., 1950, 180 F.2d 825; Charles v. Norfolk & Western Ry. Co., 7 Cir., 1951, 188 F.2d 691; Marsh v. Illinois Cent. R. Co., 5 Cir., 1949, 175 F.2d 498. In each of these cases it was held, either expressly or by necessary implication, that a trial judge's abuse of his discretion in refusing to set aside a verdict and grant a new trial could be reviewed and corrected on appeal.)
It will have been seen, then, that Rule 50 of the Federal Rules of Civil Procedure did not bring into the federal appellate practice a new concept or limitation on the right to review the proceedings in the trial court. Its purpose was to iron out procedural complexities and ambiguities that had theretofore existed respecting the raising and preservation of the legal question of the sufficiency of the evidence, by motion for directed verdict and for judgment in accordance with such motion for consideration by the trial court and by the appellate court on appeal. See 25 Va. Law Review at pp. 288-289; Hughes, Federal Practice, Vol. 18, pp. 331-336. As stated by the United States Supreme Court in Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 250, 61 S.Ct. 189, 193:
"The rule [50] was adopted for the purpose of speeding litigation and preventing unnecessary retrials. It does not alter the right of either party to have a question of law reserved upon the decision of which the court might *15 enter judgment for one party in spite of a verdict in favor of the other. Prior to the adoption of the rule, in order to accomplish this it was necessary for the court to reserve the question of law raised by a motion to direct a verdict. The practice was an incident of jury trial at common law at the time of the adoption of the Seventh Amendment to the Constitution.

"Rule 50(b) merely renders unnecessary a request for reservation of the question of law or a formal reservation and, in addition, regulates the time and manner of moving for direction and of moving for judgment on the basis of the refusal to direct. It adds nothing of substance to rights of litigants heretofore existing and available through a more cumbersome procedure." (Emphasis added.)
But, as has been noted, the limitation imposed by the Seventh Amendment on federal appellate courts is not applicable to state courts. And soon after this State was admitted to the Union the Florida Legislature abrogated the common-law limitation on review by an appellate court of the evidence. This it did by Ch. 521, Acts of 1853 (now appearing in substantially its original form as § 59.06(1), Fla. Stat. 1957, F.S.A.), which recited that "Whereas, It is expedient that certain orders and judgments of the Circuit Courts of this State, which now depend on the uncontrolled discretion of said Courts, should be reviewable in the Supreme Court," and expressly provided that an order either granting or denying a motion for new trial could be assigned as error in an appeal to this court and here reviewed "in the same manner and under the like rules and regulations as in other cases." The 1853 Act was considered by this court in Knox v. Barnett, 1882, 18 Fla. 594. After pointing out that the federal decisions as to appellate review of the evidence were "precedents not applicable here", the court said:
"We think there is no doubt of our power and duty to review the evidence before the Circuit Court upon exception to this order refusing a new trial, where the motion for the new trial was upon the ground that the finding was contrary to the evidence and to law."
To summarize, then: Rule 50 merely regulated the procedure by which a point of law respecting the sufficiency of the evidence to support a verdict for the opposing party could be raised in the lower court, the ruling on which could be assigned as an error of law and reviewed in the appellate court. It did not affect the right of a party to move for a new trial in the federal trial court on the ground that the verdict was against the weight of the evidence, even though no motion for directed verdict had been made. Because of the inhibition of the Seventh Amendment, the federal appellate court is not, ordinarily, authorized to reverse a trial judge for error in granting or denying a motion for new trial made on this ground. But no such inhibition exists in this state; and, by statute, a Florida appellate court may review the exercise of the trial judge's discretion in this respect.
In these circumstances, the fact that the Florida Rule 2.7 is patterned after the Federal Rule 50 is entirely irrelevant to the question here considered. There is nothing in our rules of civil procedure to indicate that they were intended to abrogate a law of this state that has existed for more than one hundred years. Accordingly, we hold that the order of a trial judge denying a motion for new trial on the ground that the verdict of the jury is contrary to the manifest weight of the evidence is reviewable in the appellate courts of this state on an appeal from the final judgment, even though no motion for directed verdict was made by the appellant under Rule 2.7, Fla.Rules Civ.Proc.
*16 The judgment here reviewed is reversed for the reasons first above stated and the cause remanded for further proceedings.
Reversed and remanded.
TERRELL, C.J., and THOMAS, DREW and THORNAL, JJ., concur.
NOTES
[1] Now 28 U.S.C.A. § 2105.