Maurie H. BERMAN, Plaintiff-Appellant,

v.

The PALATINE INSURANCE COMPANY, Limited, the Home Insurance Company, and Rochester American Insurance Company, Defendants-Appellees.

No. 15855.

United States Court of Appeals Seventh Circuit.

June 1, 1967.

George C. Rabens, Chicago, Ill., for appellant.

John P. Gorman, Chicago, Ill., Jacob T. Pincus, James T. Ferrini, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, MAJOR, Senior Circuit Judge, and SCHNACKENBERG, Circuit Judge.

MAJOR, Senior Circuit Judge.

Plaintiff, on and prior to October 10, 1959, was the owner and operator of a drive-in restaurant on North Milwaukee Avenue, Chicago, Illinois, known as the "Superdawg Drive-In." On that date the building and contents were destroyed by fire, resulting in an interruption of his business. Prior to the date of the fire, defendants issued to plaintiff their policies of insurance, insuring him against loss and damage to the building and contents as well as loss resulting from the necessary interruption of business. The loss for damage to the building and contents was adjusted and settled December 21, 1959, more than sixty days following the loss. For one reason and another plaintiff failed to furnish to defendants' adjusters adequate financial information

relating to his claim for business interruption, until January 11, 1961, approximately fifteen months after the fire. The instant suit was commenced September 9, 1964, almost five years after the fire.

The policies contained two provisions specifying conditions precedent to plaintiff's right to maintain an action on the policies: (1) that he render a sworn proof of loss within sixty days after the inception of the loss (the 60-day provision), and (2) that no suit or action on the policies for the recovery of any claim is sustainable unless all the requirements of the policies are complied with and unless commenced within twelve months after the inception of the loss (12-month provision). Admittedly, plaintiff did not comply with either the 60-day or the 12-month provision.

Plaintiff on brief states the contested issues as follows:

"The contested issues are whether the acts and conduct of the defendants constituted a waiver or estoppel with respect to the policy provisions requiring the plaintiff to furnish sworn proof of loss within sixty days, and to file suit within one year following the fire, or whether the failure of the plaintiff to comply with either of those provisions barred the action."

At plaintiff's request, the case was tried to a jury only on the issue of liability. The jury returned a verdict favorable to defendants, upon which judgment was entered. The only post-trial motion made by plaintiff requested vacation of the judgment and a new trial, which was denied. From the judgment thus entered and the denial of the motion for new trial, plaintiff appeals.

The Supreme Court of Illinois has held that issues of waiver and estoppel are issues of fact and not of law. Dickirson v. Pacific Mutual Life Insurance Company, 319 Ill. 311, 319, 150 N.E. 256. Such issues were so treated in the instant case, both by counsel and the Court. In opposing defendants' motion for a directed verdict, plaintiff's counsel stated

to the Court, "I believe that we very definitely have a case for the jury to determine so far as waiver is concerned." In his argument to the jury he stated, "The only question for determination revolves around whether or not Mr. Berman was led to believe that those provisions of the policy did not require that he strictly comply with them, so that is what is involved." Plaintiff also recognized the issues were for the jury by submitting an instruction, approved by the Court, as follows:

"They [defendants] charge that the plaintiff has failed to comply with certain conditions of the policies requiring the plaintiff to furnish them with sworn statements in proof of loss within sixty days following the fire and to commence suit against them within one year following that occurrence, and that because of those violations of the policy provisions the plaintiff can recover no amount from them for any loss he may have sustained in the interruption of his business."

Thus, it is indisputable that plaintiff not only requested but insisted that the issues of waiver and estoppel be submitted to the jury.

■ Plaintiff argues here, as he pointed out below in his motion for new trial, that the verdict is contrary to the manifest weight of the evidence. In support of such argument he makes a detailed statement on the issues under discussion, based on evidence most favorable to him. To the contrary, defendants state the evidence most favorable to them. After a careful consideration of the conflicting views in this respect, we think it not inappropriate to observe that the relevant factual issues are argued here as though this were a trial *de novo*. While plaintiff's argument on these factual issues is not without merit, we think that the verdict has substantial support and must prevail on this appeal.

■ Moreover, on the state of the record plaintiff has not preserved and is not entitled to question here the suf-

ficiency of the evidence to support the verdict. At the trial plaintiff made no motion for a directed verdict but, as shown, in resisting defendants' motion for such a verdict insisted that the issues be submitted to a jury. Subsequent to the judgment he made no motion for a judgment notwithstanding the verdict, but moved only for a new trial, *inter alia,* that the verdict was not supported by the evidence and that it was contrary to the manifest weight of the evidence. Plaintiff's motion for a new trial was denied. Having failed to test the legal sufficiency of the evidence below in any manner available to him, he is now precluded from a review by this Court relating to the sufficiency of the evidence to support the jury's verdict. This principle has often been recognized by this and other courts. In Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland, 202 F.2d 794, 799, on a record quite similar to that here, this Court stated:

> "Prior to the time that the jury returned its verdict the plaintiff did not move for a directed verdict or otherwise question the sufficiency of the evidence to support a verdict if returned in favor of the defendant. Under well established principles, the sufficiency of the evidence to support the verdict is not preserved for review, Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923; Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463, 465, unless this is one of those exceptional cases, Charles v. Norfolk and Western Ry. Co., 7 Cir., 188 F.2d 691, 695; Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71, which render inapplicable the general rule."

This Court recognized and gave effect to the general principle in Hamblen v. Kazlauski, 259 F.2d 754, 756, and Silbernagel v. Voss, 265 F.2d 390, 391. In the latter case we stated:

> "However, the defendant made no motion for a directed verdict at the trial; and, under well-established principles, questions as to the sufficiency of the evidence to support the verdict are not

preserved on this appeal. [Citing cases.]"

Among the numerous other cases which have recognized this principle is United States v. Socony-Vacuum Oil Co., Inc. et al., 310 U.S. 150, 247, 60 S.Ct. 811, 855, 84 L.Ed. 1129, wherein the Court stated:

> "Hence this case falls within the well established rule that neither this Court nor the Circuit Court of Appeals will review the action of a federal trial court in granting or denying a motion for a new trial for error of fact, since such action is a matter within the discretion of the trial court."

Plaintiff recognizes the general rule as urged by defendants but relies upon exceptions to such rule, citing Commercial Credit Corp. v. Pepper et al., 5 Cir., 187 F.2d 71, 75, and Charles v. Norfolk & Western Ry. Co., 7 Cir., 188 F.2d 691, 695. In *Commercial Credit,* the Court held that under the circumstances of the case the District Court abused its discretion in denying a motion for a new trial. Plaintiff had questioned the sufficiency of the evidence by a motion for judgment notwithstanding the verdict. In *Charles,* this Court recognized the general rule but held that the District Court had abused its discretion in its denial of a motion for a new trial. In doing so we described the situation (page 695):

> "In the instant case, the trial judge expressed his dissatisfaction with the verdict and felt that an injustice had been done; an erroneous instruction was given the jury imposing a burden of proof upon plaintiff not required by the applicable law; the resulting judgment denied plaintiff even compensatory damages for her out-of-pocket expense which had resulted from her false arrest and imprisonment, and imposed upon her the costs of the suit. In this situation, we think there was a miscarriage of justice. It is one of the exceptional cases which call for a reversal."

In *Irvin Jacobs, Hamblen* and *Silbernagel,* supra, this Court considered the exception to the general rule as applied

in *Commercial Credit* and *Charles,* and held the exception inapplicable. We hold here that under the circumstances the general rule is controlling, in other words, that plaintiff's reliance upon the exception to such rule is misplaced.

While plaintiff in his statement of contested issues (previously set forth) relies solely upon the waiver or estoppel issues, he argues other issues—in the main, questions of law. We think it is doubtful under the state of the record that plaintiff's argument on these issues is any aid to his effort to undermine the jury verdict. Assuming, however, that they bear some relation to the Court's discretion in allowing or denying plaintiff's motion for a new trial, we shall consider them.

The argument in this respect relates to three errors alleged to have been committed by the Court: (1) giving defendants' instruction E; (2) striking on motion of defendants paragraph 17 of the complaint, and (3) rejecting plaintiff's offer in evidence of defendants' adjusters' reports made after execution of a non-waiver agreement.

Instruction E was as follows:

"The policies of insurance issued by defendants are in a form prescribed by the Director of Insurance for the State of Illinois and provide:

" 'Suit: No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of loss.' "

No question is raised but that the instruction was a correct factual statement. Plaintiff argues, however, that advising the jury that the policy provision was in a form prescribed by the Illinois Director of Insurance was immaterial, irrelevant and calculated to create in the minds of the jury an impression that the policy provision had some extra validity. We think the argument is specious. At any rate, it is not

discernible to us what difference it would make to a jury and in what manner it could affect its thinking, whether the policy provision was inserted voluntarily by the insurer or by statutory requirement. In either situation the insurer was entitled to rely on it, the insured required to comply with it. In any event, the giving of the instruction, if error, was not prejudicial.

Plaintiff contends that the Court erred in striking from the complaint paragraph 17, which alleged in substance that about five or six months prior to the expiration of the 12-month limitation period plaintiff became and was mentally insufficient and incompetent to realize his obligations under the policies; that he remained in such condition until 1964, and that as a result thereof the limitation period was tolled during the period of such disability. The complaint did not allege that plaintiff suffered mental impairment at or prior to the date of loss (the commencement date of the 12-month suit limitation period), but rather that he suffered such impairment five or six months thereafter.

Judge Robson in a memorandum opinion discussed the authorities at some length and concluded that under the Illinois rule a disability which occurs after the limitation period has commenced to run, as alleged in the instant case, does not toll its operation.

Among the cases which support his conclusion is Calumet Electric Street Railway Company v. Mabie, 66 Ill.App. 235, 240, which stated:

"The evidence was overwhelming that Wheeler did not become insane until at least six months after the injury received by him, and his suit not having been begun within two years next after his cause of action accrued, it was barred by the statute."

More recently, in Schiller v. Kucaba, 55 Ill.App.2d 9, 203 N.E.2d 710, 715, the Court stated:

"Once the period of limitations begins to run on a legal claim, it continues to run without interruption, notwith-

standing the fact that a subsequent disability befalls the party entitled to enforce the claim."

The rule is stated in Illinois Law and Practice, "Limitations," Vol. 25, Sec. 85, as follows:

"While a personal disability, such as insanity, may postpone the commencement of the running of the statute of limitations, nevertheless, if the statute has once commenced to run against an individual, a subsequent disability on his part ordinarily will not interrupt it."

The Illinois rule was recognized by this Court in McCampbell v. Warrich Corp. et al., 109 F.2d 115, 118, wherein we stated:

"It seems to be well settled, however, that it is the disability existing at the time the decree was entered that determines his right to institute an action within two years after that disability is removed, and no supervening disability may be tacked on to the former disability in computing the time within which a direct attack may be made on the judgment complained of. [Citing cases.]"

Plaintiff in his reply brief attempts to distinguish these cases, as well as others relied upon by defendants, on the ground that they were concerned with statutory limitations, while here there is involved a contractual limitation. We think the attempted distinction is without merit. Plaintiff cites two cases in support of the claimed distinction. Buffalo Ins. Co. v. Steinberg et al., 105 Ga. App. 366, 124 S.E.2d 681, 685, and Gunter, Admx. v. American Ins. Co., decided by the Tennessee Court of Appeals in 1961. (We are advised that this case is reported only in 10 Fire and Casualty Cases (CCH) 773.) Both of these cases negate rather than confirm the distinction. In Buffalo, the whereabouts of the insured was unknown at the time of a fire loss and the suit was brought by the conservator of his estate. The action was defended on the ground that it had not been commenced within twelve months, as required by the policy. As to this case plaintiff on brief states:

"Both the Trial Court and the Court of Appeals rejected the contention, holding that because of his absence the insured was excused from the stated policy requirements, where he had not been heard from for several years preceding the fire loss."

Plaintiff as to Gunter states:

"In that case, action was brought on a fire insurance policy but the insured had died more than a year following the loss by fire without taking action against the insurer. Subsequently, suit was commenced by the insured's administrator. There was evidence that the insured was of unsound mind at the time of the fire and that he so remained until death."

Thus, in Buffalo, the whereabouts of the insured was unknown at the time of the fire loss and during the 12-month period, and in Gunter, the insured was of unsound mind at the time of the loss and remained so until his death.

As previously shown, plaintiff failed to furnish defendants' adjusters the necessary financial information relating to his claim for business interruption, until January 11, 1961, approximately fifteen months after the fire. This being some three months after the expiration of the 12-month period, defendants refused to consider the claim unless he signed a non-waiver agreement. The adjusters explained to him the legal implications of such an agreement. On February 3, 1961, plaintiff signed the non-waiver agreement after having consulted three attorneys, each of whom advised him to sign it.

This brings us to plaintiff's contention that the Court erred in rejecting his proffered evidence, consisting of adjusters' reports made to defendants after the execution of the non-waiver agreement. The District Court in sustaining the objection to such exhibits stated:

" * * * I cannot see how this is germane to any of the issues, either the waiver of the one-year period or of the

60-day period, because they are proceeding under the non-waiver agreement."

■ For the reason stated, the ruling of the Court denying admission of these exhibits is obviously correct, so much so that we see no point in further burdening this opinion with citation or discussion of cases called to our attention. The very purpose of the non-waiver agreement, as expressly provided by its terms, was to permit the adjusters to continue their investigation as to the amount of loss without in any way prejudicing any rights or defenses vested in the insurers on the date of the execution of the non-waiver agreement.

Other points argued by plaintiff have been considered and found to be without merit.

The judgment appealed from is Affirmed.