471 So.2d 1318 (1985)
Steven J. GREENSTEIN, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY, Appellee.
No. 84-1465.
District Court of Appeal of Florida, Third District.
June 18, 1985.
Rehearing Denied July 23, 1985.
*1319 Beckham, McAliley & Schultz, Tampa, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel Eaton, Miami, for appellant.
Squire, Sanders & Dempsey and Kenneth L. Ryskamp, Joanne M. Rose and David C. Goodwin, Miami, for appellee.
Before HENDRY, HUBBART and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
This appeal is from a final judgment entered on a jury verdict for the defendant in a suit under the Federal Employers' Liability Act (F.E.L.A.)[1] for personal injuries sustained by the plaintiff.
Appellant Steven Greenstein was employed by appellee Seaboard Coast Line Railroad Company (Seaboard) as an assistant to the flagman. Mr. Greenstein was a member of a four-man crew engaged in moving freight cars with a switch engine to and from various sidetracks. The conductor was in charge of the crew. Second in charge was the engineer, and third in charge was the flagman. Mr. Greenstein was the low man in the hierarchy of the four-man crew. The three senior members of the team were provided with radios and could communicate among themselves from a distance without the use of hand signals. Mr. Greenstein was not provided with a radio.
On the date the injury to Mr. Greenstein occurred, according to the engineer, the flagman and Mr. Greenstein, the conductor had given them directions concerning various movements to be made. The conductor told them the last movement was to be a "running switch" at a certain sidetrack. The conductor disputes that he ever discussed with the crew the performance of a running switch. The running switch involved coupling the front of the engine to several freight cars, backing the engine to get the freight cars moving, uncoupling the moving cars manually before the switch was released, accelerating the engine so it would cross the switch with some distance between it and the cars following it, throwing the switch manually before the rolling cars reached it, thereby shunting them onto a different track, and then stopping the *1320 rolling cars in the proper spot on the other track.
Both the engineer and the flagman testified they heard a transmission from a dispatcher that a train was leaving the yard in Hialeah shortly before the running switch movement commenced. The conductor testified the radio transmission was a command to clear up the line and that the engineer and the flagman should have informed Mr. Greenstein of the command. The conductor said he was satisfied that everyone knew to clear up the line, so he left the switch at which the running switch was thereafter executed and walked to another switch.
Subsequently, the engineer, the flagman and Mr. Greenstein prepared to execute the running switch. All three assumed that the conductor was where he was supposed to be, manning the switch. It was the flagman's responsibility to find a good brake on one of the cars and to give a hand signal to let the others know he was ready. The flagman did make such a signal. Mr. Greenstein, in response to the flagman's signal, hand-signalled the engineer. The engineer then began backing the engine. Mr. Greenstein, who was located at the front steps of the engine, uncoupled the cars and remained on the engine as it accelerated toward the switch. As the engine crossed the switch, Mr. Greenstein observed the switch was not manned. This presented a risk of injury to the flagman who was riding the cars because a collision with the engine was inevitable. Mr. Greenstein averted a collision by jumping from the engine, running to the switch and throwing it, injuring his knee in the process.
The running switch movement violated three company rules: one rule which required the conductor to be present at the switch, another rule which required a mutual understanding between all members of a crew that a movement was to be made, and a third rule which required the conductor or his designee to initiate the movement.
Mr. Greenstein sued Seaboard for the injuries he sustained. At trial, during the jury charge conference, Mr. Greenstein requested the court to instruct the jury with the following definition of causation: "Negligence is the legal cause of injury if it produces or contributes in whole or in part, even in the slightest, to producing such injury." This charge was based upon the F.E.L.A., which places a less stringent burden on the plaintiff for establishing an employer's liability than the showing of proximate cause which is required for ordinary negligence cases.[2] Seaboard objected to the inclusion of the words, "even in the slightest". The trial court sustained Seaboard's objection.
After the closing arguments, Mr. Greenstein also requested the trial court to instruct the jury with the following variation of Florida Standard Jury Instruction (Civ.) 3.1b: "This court has determined and now instructs you, as a matter of law that the defendant is responsible for the negligence of other members of the plaintiff's crew."[3] Seaboard objected and the trial court again sustained the objection, stating that the matter of Seaboard's vicarious liability was covered elsewhere in the charges. The jury returned a verdict for Seaboard. Mr. Greenstein moved for a new trial and his motion was denied.
Mr. Greenstein raises three issues on appeal: first, the trial court erred in denying his motion for a new trial on the ground *1321 that the jury verdict was contrary to the manifest weight of the evidence, second, the trial court committed reversible error in striking the words "even in the slightest" from the causation portion of the jury instruction, and third, the trial court committed reversible error in refusing to instruct the jury that Seaboard was responsible for any negligence of Mr. Greenstein's co-employees which contributed to his injury.
Seaboard's response to Mr. Greenstein's first argument that the jury verdict is contrary to the manifest weight of the evidence is that only Mr. Greenstein's negligent conduct was responsible for the injuries he suffered because he initiated the running switch. We disagree with Seaboard's contention and reverse for a new trial.
We are puzzled by the jury verdict against Mr. Greenstein. Inasmuch as it was plain he was damaged, the verdict must have been derived from Seaboard's argument that Mr. Greenstein alone was negligent. We are unable to see, however, under the facts offered by Seaboard, how the jury could find that Mr. Greenstein's own negligence was solely responsible for his injuries. It is undisputed that Mr. Greenstein initiated the running switch only in response to a signal from the flagman and that he acted in concert with the flagman and the engineer. Although Mr. Greenstein may have been contributorily negligent, such does not prevent his recovery against Seaboard if the negligence of any one of his three co-employees contributed to his injuries.
Taking Seaboard's version of the facts as correct, if the conductor were not negligent in directing the running switch and then leaving the switch without cancelling the movement, then the flagman and the engineer were equally to blame with Mr. Greenstein for proceeding with the running switch: 1) in the face of a clear-up instruction (which Mr. Greenstein had no knowledge of); 2) in the conductor's absence from the switch; 3) without a direction from the conductor or his designee; and 4) without a mutual understanding among the crew as to the movement to be performed. Such actions also violated three company rules. The negligence wasn't that of Mr. Greenstein alone when he performed the movement along with two crew members who had authority over him. Seaboard argues Mr. Greenstein was in the best position to walk over and visually determine if the conductor was present at the switch, but in fact, the superior positions were held by the engineer and the flagman who could have checked with the conductor via their radios.
Given all this, we find Mr. Greenstein is entitled to a new trial. A party is entitled to a new trial where the jury verdict is contrary to the manifest weight of the evidence. Ruth v. Sorenson, 104 So.2d 10 (Fla. 1958); Yappa v. Bennett, 80 So.2d 600 (Fla. 1955); Kinsey v. Kelly, 312 So.2d 461 (Fla. 1st DCA 1975).
As to the second issue raised by Mr. Greenstein, we do not find it necessary to rule on whether or not it is reversible error to omit the words "even in the slightest" from the jury charge on causation since a new trial has already been ordered. For the purpose of guiding the trial court on retrial, however, we hold that the court should incorporate the words "even in the slightest" in the causation section of the jury instructions. The basis for our holding is found in Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499 (1957) where the Court stated:
Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.
Although the Court in Rogers was concerned with whether the case should have gone to a jury, cases interpreting Rogers have held the Rogers language belongs in a F.E.L.A. jury instruction. Hausrath v. *1322 New York Central Railroad Co., 401 F.2d 634 (6th Cir.1968); DeLima v. Trinidad Corp., 302 F.2d 585 (2d Cir.1962). A number of cases have implicitly approved such words or comparable words in a F.E.L.A. claim jury instruction. Farnarjian v. American Export Isbrandtsen Lines, Inc., 474 F.2d 361 (2d Cir.1973); Funseth v. Great Northern Railway Co., 399 F.2d 918 (9th Cir.1968), cert. denied, 393 U.S. 1083, 89 S.Ct. 865, 21 L.Ed.2d 775 (1969); Tyree v. New York Central Railroad Co., 382 F.2d 524 (6th Cir.), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); Iannacito v. Denver & Rio Grande Western Railroad, 380 F.2d 1019 (10th Cir.1967); Unto v. Moore-McCormack Lines, Inc., 293 F.2d 26 (3d Cir.1961); see W. Mathes, Jury Instructions and Forms for Federal Civil Cases, 28 F.R.D. 401, 497, instruction Civ. 13.12 (1962).
As to the third point raised on appeal, we find the jury was properly instructed regarding Seaboard's vicarious liability as such was covered adequately in the jury charges which were given.
The final judgment is reversed and the cause remanded for a new trial, for the reasons stated and based upon the authorities cited herein.
Reversed and remanded.
NOTES
[1] 45 U.S.C.A. §§ 51-60 (1972).
[2] law [F.E.L.A.] was enacted because the Congress was dissatisfied with the commonlaw duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence.
Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493, 500 (1957).
[3] The Florida Standard Jury Instruction (Civ.) 3.1b reads as follows: "The court has determined and now instructs you, as a matter of law, that (defendant) is responsible for any negligence of (name) in (describe alleged negligence)."