**Donald ROGERS, Plaintiff-Appellant,**

v.

**ACF INDUSTRIES, INC., Defendant and Third-Party Plaintiff,**

v.

**LACLEDE STEEL COMPANY, Third-Party Defendant.**

No. 84–1818.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1985.

Decided Oct. 4, 1985.

A. Robert Kassin, Sherwood & Kassin, Bethalto, Ill., for plaintiff-appellant.

James K. Almeter, Hoagland, Maucker, Bernard & Almeter, Alton, Ill., for defendant and third-party plaintiff.

Before WOOD and FLAUM, Circuit Judges, and BROWN, Senior District Judge.[*]

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas, is sitting by designation.

WESLEY E. BROWN, Senior District Judge.

This appeal arises from a diversity action commenced by the plaintiff-appellant, Donald Rogers, against the defendant manufacturer, ACF Industries, Inc., ("ACF"). Rogers sought to recover damages under the theories of strict liability in tort and common law negligence for personal injuries sustained in the course of employment at Laclede Steel Company ("Laclede"), when his right hand was caught in the coupling mechanism of a mold buggy. Laclede was added as a third-party defendant by an amended complaint filed by ACF for indemnity and contribution. The case was submitted to a jury only on the theory of strict liability. The jury found for ACF. Rogers moved for a new trial, contending that the district court should set aside the verdict as contrary to the great weight of the evidence. The district court denied the motion and entered judgment for ACF. The primary issue in this appeal is whether the district court erred in instructing the jury on ACF's contention that it denied "the complete mold buggy was ever in its control." Rogers also argues that the verdict is contrary to the manifest weight of the evidence. For the reasons discussed below, we affirm.

Laclede used the mold buggies to move molten metal contained in molds to various parts of the steel plant. The mold buggies were joined to form a train, with an engine pulling it over a network of rail tracks within the plant. The link-and-pin coupling system of the mold buggies consisted of a drawhead fitted into a coupling pocket on each end of the buggy and a steel link, through which a line pin was inserted from the underside to secure the connections. The bottom side of the coupling pocket was made of a steel plate, on which the drawhead reposed. The line pin was connected to a lever attached to and extended from the drawhead. The mold buggies were coupled and uncoupled by moving the link-and-pin lever either in an upward or downward motion. It is undisputed that the engineers at Laclede designed the entire mold buggy for its operating uses. Laclede sent its drawings and specifications to ACF, from which the mold buggies were fabricated and assembled in accordance with Laclede's instructions. Laclede also supplied to ACF the coupling mechanism which ACF was required to assemble and install into the coupling pockets. Laclede added onto the drawheads the link-and-pin levers before putting the mold buggies into service.

Rogers was employed at Laclede as a switchman. He was responsible for the movements of the mold buggy trains within the steel plant. On June 9, 1979, while Rogers was moving a train of mold buggies from the smeltery, the last mold buggy, No. 180, derailed. When it ran aground, the steel link connected to the mold buggy raised the drawhead from the steel plate to the upper part of the coupling pocket. After he uncoupled the derailed buggy from the train, Rogers attempted to reset the linkwork by grasping the line-pin with his right hand and threading it through the steel link and the drawhead. As he was doing this, the drawhead suddenly dropped down, pinching his hand between it and the steel plate.

Rogers proceeded at trial upon the theory that a manufacturer is strictly liable for the injuries caused by the defective products that it places in the stream of commerce. In essence, Rogers alleged that his injuries were proximately caused by a defective condition which existed in the mold buggy at the time ACF delivered it to Laclede. His expert witness offered an opinion that the design of the coupling mechanism was defective because it failed to provide a protective means to prevent a switchman's hand from being caught between the drawhead and the lower steel plate. ACF defended on the basis that it did not design the mold buggy but merely manufactured it in accordance with the drawings and specifications provided to it by the engineers at Laclede, and that the coupling mechanism of the mold buggy was not in a defective condition at the time it left the manufacturing facility of ACF. The evidence is clear that the coupling mechanism of the mold buggy delivered by

ACF was only partially assembled—without the functional linkwork. Laclede completed the coupling mechanism by installing a line-pin and a lever on the drawhead of the mold buggy after Laclede accepted it from ACF.

At the instruction conference, Rogers submitted a number of proposed instructions for the jury on the issue of strict liability. One of the proposed instructions that the district court declined to adopt as originally tendered was Plaintiff's Instruction No. 27. This instruction was refused because it did not conform to the evidence and the contentions of the parties. The record shows that ACF refuted Rogers' allegation in claiming the mold buggy was a completed product at the time it left ACF's control. Rogers tendered an amended instruction which reflected the relative positions of both parties. The court accepted the amended instruction, and Rogers made no further objections to it.[1]

█ Rogers in this appeal challenges, for the first time, one of the jury instructions which was revised and retendered by him and accepted by the district court. Rogers claims that the district court "compelled" him to modify his requested instruction to include the ACF's contention that it denied "the complete mold buggy was ever in its control." Rogers contends that the district court, in giving such an instruction pertaining to ACF's claim, erroneously focused on ACF's conduct and duty, rather than on the condition of the mold buggy itself. Inasmuch as this claim of error on a jury charge was not objected to in a timely and specific manner, see Fed.R.Civ.P., Rule 51,[2] Rogers has waived any further resolution of this issue in an appellate review. *Nanda v. Ford Motor Co.*, 509 F.2d 213, 224–25 (7th Cir.1974).

█ We, however, need not rest our decision in affirming the district court's

1. The Record on Appeal does not contain a complete set of the instructions given to the jury and the court's verbal charges to the jury were not transcribed. The court, however, gave the following instructions pertaining to the issues on the law of products liability and the burden of proof, all of which were based on the proposals tendered by Rogers.

> "The plaintiff has the burden of proving each of the following propositions: First, that the condition claimed by the plaintiff as stated to you in these instructions existed in the mold buggy; Second, that the condition made the mold buggy unreasonably dangerous; Third, that the condition existed at the time the mold buggy left the control of the defendant, A.C.F. Industries, Inc.; Fourth, that the plaintiff was injured; Fifth, that the claimed condition of the mold buggy was a proximate cause of the plaintiff's injuries.
> If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. But if, on the other hand, you find from your consideration of the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."
> "The defendant, A.C.F. Industries, Inc., denies that the complete mold buggy was ever in its control; denies that the claimed condition existed in the mold buggy at the time the mold buggy left defendant A.C.F. Industries, Inc.'s control; denies that the claimed condition of the mold buggy made the mold buggy

> unreasonably dangerous; and denies that the claimed condition was a proximate cause of the plaintiff's injuries."
> "When I use the expression 'unreasonably dangerous' in these instructions, I mean unsafe when put to a use that is reasonably foreseeable considering the nature and function of the mold buggy."
> "If you decide that the plaintiff has proved all the propositions of this case, then it is not a defense that the defendant A.C.F. Industries, Inc., did not design that portion of the mold buggy which rendered the mold buggy unreasonably dangerous."
> "If you decide that the plaintiff has proved all the propositions of his case, then it is not a defense that care was used in the manufacture of the product."

2. Rule 51, Fed.R.Civ.P., provides: "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failing to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

judgment on the basis of waiver alone. From our review of the entire record, we find Rogers' claim of error to be without factual basis and meritless for these reasons. First, there is nothing in the record, and Rogers has not pointed out any specific facts, to support an allegation that the revised instruction was a product of coercion. Second, we conclude that the jury instructions, taken as a whole, were consistent with the Illinois law. The instructions pertaining to the Illinois law on strict liability in tort[3] were based upon the Illinois Pattern Instructions. A party, upon proper request, is generally entitled to have its theory of the case presented to the jury, if it is within the issues contested and if there was evidence to support it. *Florists' Nationwide Telephone Delivery Network v. Florists' Telegraph Delivery Association*, 371 F.2d 263, 270 (7th Cir.), *cert. denied*, 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967). In reviewing a claim of error in jury instruction, we must consider it in the light "not only of the instructions as a whole, but of the allegations of the complaint, the opening statements, the evidence, and the closing arguments" of the parties. *Alloy International Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir.1980). One of the factual issues contested in the opening statements, throughout the evidence, and in the closing arguments was that ACF denied that the mold buggy was a completed product when it left its control. We believe that the jury was properly instructed to resolve the conflicting evidence on this issue. We conclude that the instructions as given fairly and adequately reflected the applicable law based on the evidence and the contentions of the parties.

 Rogers also has asserted, as he argued in his motion for new trial, that the verdict was against the manifest weight of the evidence. Rogers, however, did not move for a directed verdict in his favor before the case was submitted to the jury. *See* Fed.R.Civ.P., Rule 50(a). It is well established in this Circuit that the sufficiency of the evidence supporting jury submission of a case or the jury's findings is not reviewable on appeal unless the party seeking review has made a timely motion for a directed verdict in the trial court. *Ed Houser Enterprises, Inc. v. General Motors Corp.*, 595 F.2d 366, 371 (7th Cir.1978) (per curiam); *Berman v. Palatine Insurance Co.*, 379 F.2d 371, 372–74 (7th Cir. 1967); *Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland*, 202 F.2d 794, 799 (7th Cir.1953); *see generally* 5A J. Moore, *Federal Practice* ¶ 50.05(1) at 50–45 to 50–46 (2d Ed.1985). Absent a motion for a directed verdict, this Court will not reverse a district court for denial of a new trial on the basis that the verdict was against the weight of the evidence unless such a denial constituted an abuse of discretion. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193, 197 (1980); *Commercial Credit Corp. v. Pepper*, 187 F.2d 71, 75 (5th Cir.1951).

 Although the parties do not dispute the evidence which shows that Rogers suffered damages attributable to the alleged injuries, there was conflicting evidence presented at trial as to the condition of the mold buggy. This raised questions of fact

---

**3.** The district court's strict liability instructions, *see ante* footnote 1, accurately set forth the law as enunciated in Section 402A of the Restatement (Second) of Tort (1965), which has been adopted by Illinois. In *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), the Illinois Supreme Court recognized a cause of action in strict liability in tort. To succeed in a manufacturer's products liability suit, a plaintiff must prove that his injuries resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. *Dunham v. Vaughan &*

*Bushnell Manufacturing Co.*, 42 Ill.2d 339, 247 N.E.2d 401, 403 (1969). A product is defective and unreasonably dangerous to the user when it fails to "perform in the manner reasonably to be expected in light of (its) nature and intended function." *Id.* It is not a defense that another party may have acted to make the product more unsafe to the user "so long as the unsafe condition attributed to the manufacturer, and which existed when the product left the manufacturer, is the proximate cause of the plaintiff's injury." *Karabatsos v. Spivey Co.*, 49 Ill.App.3d 317, 7 Ill.Dec. 158, 364 N.E.2d 319, 323 (1977).

on whether the alleged condition was unreasonably dangerous to the users and whether it was a proximate cause of Rogers' injuries. These questions were for the jury to decide, whose role as a trier of fact was to make credibility choices with respect to conflicting testimony of the witnesses. *Kuziw v. Lake Engineering Co.,* 586 F.2d 33, (7th Cir.1978). The parties thoroughly litigated the liability issue. Our appellate function is completed when we are convinced that there is an evidentiary basis in the record for the jury's verdict, "... it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." *Lavender v. Kurn,* 327 U.S. 645, 652–54, 66 S.Ct. 740, 743–44, 90 L.Ed. 916, 922–23 (1946). On the basis of the entire record, we find that there was sufficient conflicting evidence on the liability issue to justify the submission of the case to the jury. We conclude that the district court did not abuse its discretion in refusing to order a new trial upon an allegation that the verdict was contrary to the weight of the evidence.

Finding no reversible error, we affirm the district court's judgment.